# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

ROCCO ELLIS,

    Plaintiff,

v.                                                       Case No.: 3:17-CV-658-LC/MJF

OKALOOSA COUNTY JAIL,
STEFAN W VAUGHN, and
GLOBAL PRISONERS SERVICES d/b/a
TEXAS PRISONER TRANSPORT,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on two Motions to Dismiss, one filed by Defendant Global Prisoners Services d/b/a Texas Prisoner Transport ("GPS") (ECF No. 39), and one filed by Defendants Stefan Vaughn and Okaloosa County Jail. (ECF No. 40). Plaintiff filed a response. (ECF No. 44). For the reasons which follow, the undersigned respectfully recommends that the Motions to Dismiss be denied without prejudice and that the Plaintiff be afforded an opportunity to file an amended complaint.

## I.   Background

The Plaintiff's complaint consists of merely two paragraphs. Its allegations are set forth below in their entirety:

> On March 6th 2017 I was arrested in Ft. Walton Beach Fla. on a warrant issued in my home state of Massachusetts. The arresting officer allowed me to take my wallet, phone and my meds. I told them I had just purchased the months refills including insulin and syringes and was assured the jail would be made aware of my Diabetes. The Jail (The Okaloosa county jail, in Crestview Fla.) was most certainly aware cause they tested my sugar three times a day, put me on a special Diabetic diet and monitored me closely for my entire stay. They clearly knew I was an insulin dependent Diabetic.
>
> On April 22nd 2017 the "Texas prisoner transport" (a company) arrived to take me back to MA. When I arrived up front to prepare to leave and have my restraints put on I was standing along side the two transporting officers (later to be known as "Rodney" and "Ms. Silva", Two very kind and professional people) when a female desk Sargent handed Ms. Silva a large ziplock bag clearly containing medicine meant for me. The Sgt. then said "Stop at CVS , we've called in refills for him (me) just go through the drive through". Well about 10 min. later we did just that and we were on our way. Later that evening after eating I began to feel weak and not well and asked the officer for a shot of insulin. They started freaking out saying that the jail not only didn't provide them with the drug but never even told them I was a Diabetic! (both of the officers will confirm). I got real sick, passed out and was unresponsive. Fellow inmates, I'm told, slapped me and splashed water on my face. The two officers pulled over and sent for an Ambulance to meet us on the Highway (Louisiana I think). After 23 minutes the EMS arrived and they didn't have any of the needed insulin either! (Greens EMT Service). They did test my sugar and it was 486, for me Diabetic coma territory. The two officers were very concerned (Ms. Silva was visibly shaken and was repeatedly cussing out the Okaloosa jail) for my health and called their office to tell them they were bypassing their next pickup to take me directly to a Hospital. They took me directly to the "Bush

Foundation Hospital" in N. Texas where I was admitted for four hours and stabilized with Novalog (emergency insulin). After the overnite at a small Texas county jail.....a [welcome] decompression from the very close call of the nite before, the nurse there was kind enough to pre load about 8 or 9 syringes for me to use on the trip. The clear undisputed negligence of the Defendants not telling the transport officers that I was Diabetic came very close to killing me. I still have nightmares. Also, during that entire trip I and the Four other male prisoners faced each other on bench seats of a small cargo van, legs shackled, hands cuffed and then chain to your waste ...and NONE OF US was EVER seat belted in!! We were often hitting bumps, potholes and not to gentle stops or lane changes caused us to slam Dominos style into the front cage.. That was a big concern for me when I started getting sick thinking how my balance (i.e. consciousness) would allow me to be tossed like a rag doll and possibly break bones, or worst. Personally, any belts that were meant for us were not visible to me....and if they were there it's the SWORN DUTY and LEGAL OBLIGATION of the officers to buckle us up (we most certainly wouldn't be able to do so) and see to it we don't drive an inch without doing so. All fellow prisoners in that van can attest to the total factuality of none of us EVER being buckled in.

(ECF No. 1). The Defendants, in their respective Motions to Dismiss, point out the complaint's fatal deficiencies.

## II.   Discussion

A *pro se* plaintiff's complaint must be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972) (per curiam); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). So construed, Plaintiff's complaint contains two allegations of negligence.

First, Plaintiff alleges that "[t]he clear undisputed negligence of the Defendants not telling the transport officers that I was Diabetic came very close to killing me. I still have nightmares." Second, Plaintiff alleges that GPS's employees did not properly buckle in the Plaintiff or otherwise keep him safe during the transport.

By using the blanket term "Defendants" in the first allegation, Plaintiff fails to give notice to the court and the parties whether he is alleging that GPS was partly involved in that negligence. Also, the complaint does not specify what permanent harm, other than "nightmares," resulted from either allegation of negligence. Furthermore, Plaintiff has failed to properly name the County as a party. He incorrectly names Stefan Vaughn in his official capacity as a County employee, as a party to this suit. Additionally, he failed to allege proper compliance with mandatory pre-suit notice requirements, and he fails to meet the minimum pleading standards pursuant to Rules 8, 10, and 18 of the Federal Rules of Civil Procedure. The Complaint also contains no statement regarding a basis of federal jurisdiction. Finally, the Plaintiff did not ask for any relief in the complaint, such as damages.

A court does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Investments v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998), *overruled on other grounds*

*by Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Thus, although Plaintiff's complaint contains glaring deficiencies, this court is not free to revise the complaint to cure such deficiencies. Furthermore, this court can only guess at the Plaintiff's intent.

Also, Federal courts are courts of limited jurisdiction, and they possess only the power authorized by the Constitution and relevant statutes. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 2616-17 (2005); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994); *Aldinger v. Howard*, 427 U.S. 1, 15, 96 S. Ct. 2413, 2421 (1976). Indeed, "it is to be presumed that a cause lies outside" a federal court's "limited jurisdiction" until established otherwise. *Kokkonen*, 511 U.S. at 377, 114 S. Ct. at 1675. A plaintiff invoking the court's jurisdiction has a duty to establish the basis for such jurisdiction in the complaint. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Regardless, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quotations omitted). A federal court may not consider the merits of a case unless and until it is certain that it has subject matter jurisdiction. *See Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013). A federal "court must dismiss a case without ever reaching the merits if it concludes

that it has no jurisdiction.'" *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)).

Congress has granted federal courts jurisdiction over diversity cases and those raising a federal question. *Taylor*, 30 F.3d at 1367. Diversity jurisdiction is the power to decide cases between citizens of different states. *See* 28 U.S.C. § 1332; *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). Pursuant to 28 U.S.C. § 1332(a)(1), federal courts have jurisdiction over cases where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. Federal courts also have subject matter jurisdiction over cases involving a federal question. 28 U.S.C. § 1331.

Here, if Plaintiff intends to invoke diversity jurisdiction, he must allege the citizenship of each party and the amount in controversy. Plaintiff has failed to do so. It is possible that the Plaintiff is attempting to assert a claim for relief under 42 U.S.C. § 1983. To assert a claim under § 1983, a plaintiff must allege that: (1) an act or omission deprived her of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017); *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015); *Richardson v. Johnson*, 598

F.3d 734, 737 (11th Cir. 2010). The plaintiff must allege facts showing an affirmative causal connection between each specific defendant's conduct and the alleged deprivation of his constitutional rights. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). If a plaintiff cannot satisfy these requirements or fails to provide factual allegations in support of his claim, the complaint is subject to dismissal. *Richardson*, 598 F.3d at 737-38.

Despite these fatal deficiencies, because the Plaintiff is proceeding *pro se*, he should be afforded an opportunity to cure these deficiencies in an amended complaint using the court-approved form.

### III. Conclusion

Accordingly, the undersigned respectfully **RECOMMENDS** that:

1. The Motions to Dismiss (ECF Nos. 39 & 40) be DENIED without prejudice to Defendants later moving to dismiss any amended complaint.

2. That the Clerk of the Court be directed to send Plaintiff a blank civil rights complaint form; and

3. That Plaintiff be directed as follows:

    a. In order to proceed with this case, Plaintiff must file an amended complaint within 21 days of the order adopting this report and recommendation.

    b. The amended complaint must set out factual allegations showing that there is a basis for the exercise of federal subject matter jurisdiction over Plaintiff's claims and which remedy the

    deficiencies described in the magistrate judge's report and recommendation.

  c. Failure to comply with the District Court's order may result in dismissal of the case without further notice.

At Panama City, Florida, this 25<u>th</u> day of January 2019.

      /s/ *Michael J. Frank*
      **Michael J. Frank**
      **United States Magistrate Judge**

## **NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.